(18 Misc. Rep. 198.)

### AKERS v. OVERBECK et al.

(Supreme Court, Appellate Term, First Department. October 29, 1896.)

1. BAILMENT—LIABILITY OF BAILOR.

    A bailor delivering an article to the bailee for work to be performed thereon is only required to use reasonable care to see that the article is not in such a condition as to cause injury to the bailee which he could not reasonably expect.

2. SAME—NEGLIGENCE.

    Negligence on the part of defendant is not shown by the fact that a bag of coffee delivered by him, through a broker, to plaintiff to be roasted, contained a large stone, which could not have been discovered by an outward inspection of the bag, and by which plaintiff's roasting machine was broken; it appearing from plaintiff's testimony that the presence of such a stone in a bag of coffee was exceptional.

3. EVIDENCE—ADMISSIONS—ANSWER TO INDEFINITE QUESTION.

    An answer by defendant to an indefinite question, admitting plaintiff's cause of action, is not conclusive against him, where his other testimony was directly opposed thereto, and the case proceeded after such answer without further reference thereto by either party.

Appeal from Fifth district court.

Action by Frederick Akers against Charles Overbeck and others. There was a judgment in favor of plaintiff, and defendants appeal. Reversed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Henry Wendt, for appellants.

James P. Niemann, for respondent.

BISCHOFF, J. This action was brought to recover damages for breakage of and injury to the plaintiff's coffee-roasting apparatus, through the negligence of the defendants in furnishing the plaintiff with a bag of coffee, under a contract for its roasting, when such bag contained a large stone, weighing between 26 and 27 pounds, which, being introduced into the machine together with the coffee, occasioned the damage in suit. The defendants were grocerymen, and had employed the plaintiff in roasting green coffee for them during a period of 15 years, it being their custom to deliver the coffee to him in bags, which, without examination, were cut open by him, and emptied into his machine. Small stones, about the size of a coffee bean, were sometimes to be found in these bags, and, for a special compensation, they were sorted out by the plaintiff when expressly required so to do. These stones, however, were not of sufficient size to cause injury to the machine, and were usually removed after the roasting process had been completed. The requirement for sorting, in the case of these stones, was apparently for the benefit only of the groceryman, not for the protection of the miller's apparatus; and no such requirement had entered into the contract for roasting in the present instance.

The question at issue had to do solely with the defendants' responsibility for the presence of this stone in the bag, its size being entirely beyond anything such as could be looked for in a bag of coffee as handled in the usual course of trade. From the plain-

tiff's testimony it appears that in 21 years' experience in the business he had never seen anything like such a stone in such a situation; nor had his witness Reid, in the course of 45 years devoted to the trade. The stone was in the middle of the bag, and so was not discoverable by an inspection which did not go thoroughly into the contents; and it is to be determined whether the defendants' duty to the plaintiff called upon them to make such an inspection. It is not disputed that the stone was placed in the bag by some one other than the defendants. The bag was never in their possession, but was sent to the plaintiff by one Davidson, a coffee broker, upon the defendants' order, and the plaintiff's written receipt of the bag from Davidson appeared in evidence. The irresistible inference is that the presence of this stone was due to the fraudulent attempt on the part of some person other than the defendants to obtain the price of 26 pounds of coffee more than were contained in the bag, and the question is: Were the defendants negligent in failing to inspect the bag before its delivery to the plaintiff, with a view to the discovery of this foreign substance? The answer must be that they were not. . The defendants, as bailors, were called upon, in the performance of their contract, to furnish the subject of the bailment, which was here of the nature locatio operis faciendi, in a condition such as would enable the plaintiff to properly perform his task (see Story, Bailm. § 425); and, upon analogy to the principles governing contracts for the performance of services generally, a liability upon the part of the defendants would attach if, through their negligence, the thing furnished caused an injury which would not reasonably have been expected by the plaintiff, as bailee. On no principle, however, could the defendants be held to have insured the plaintiff against damage in the performance of his work, by reason of every conceivable defect which might exist in the subject of the contract, here a bag of coffee, which was not in its nature a dangerous thing in any aspect. They were required to exercise ordinary care, and no more; and negligence, upon the present state of facts, would result only from their knowledge and concealment of this defect, or from their failure to use reasonable diligence to discover it. Devlin v. Smith, 89 N. Y. 470. And see McKay v. Wild West Co., 17 Misc. Rep. 603, 40 N. Y. Supp. 592. But to have discovered this stone, of the presence of which they had no actual knowledge, it would have been incumbent upon the defendants to have particularly emptied the bag; and the evidence shows that, in the usual course of trade, such a search would never have disclosed anything of a like nature.

Why, then, were the defendants negligent in failing to look for a thing the discovery of which could not have been expected, and which was present in this instance only through the willful fault of some one, whose act was inimical to the interests of all in the trade, and alone did bring about the plaintiff's damage? Neither the plaintiff nor Mr. Reid, his witness, would have expected to find any such a substance in a bag of coffee, with the experience born of many years devoted to this trade. The plaintiff's custom had been to place the contents of the bags in the machine without examination,

and throughout a period of 21 years nothing like the present condition had arisen to call for change of this apparently justifiable course. It cannot be said that the defendants failed to act as reasonably prudent persons would have acted, merely through not inspecting the contents of the bag, with a view to avoiding this extremely unusual course of injury. If the plaintiff could connect the broker Davidson, as the defendants' agent, with the act of placing this stone in the bag, or could charge the defendants, through him, with negligence in permitting it to come into the plaintiff's hands in the manner noted, a different question would be presented; but, while evidence in this regard might be forthcoming upon a second trial, the record before us fails to disclose a cause of action against the defendants. The fact that they were allowed by Davidson the difference in the price of the bag which the weight of the stone represented is, of course, insufficient to charge the defendants with negligence for its presence. This was merely a natural adjustment of the right arising under the sale of Davidson, and the fact does not support any reasonable inference that the defendants were responsible for Davidson's recognition of the claim that the stone was not a proper part of the contents of the bag, at the agreed price.

It is urged by the plaintiff that there was evidence showing that the defendants knew of the presence of the stone in the bag before its delivery to him, the contention being based upon the following question and answer, which appear in the course of the cross-examination of the defendant Charles Overbeck, touching the allowance made to the defendants by Davidson for the weight of the stone: "Q. My question includes that you claimed it, and received it,—that is, compensation for the difference,—before it was delivered to Mr. Akers? A. Yes, sir." The question was not definite, and, in view of the fact that the proof throughout showed the defendants to have had no knowledge of the presence of the stone until after the injury in suit, and that the claim by the defendants against Davidson was made upon the plaintiff's affidavit of the circumstances, we think that the inquiry was intended and understood to go only to the difference between the weight of the bag before it was delivered and after the stone was removed. According to the plaintiff's construction of the question, the defendants' reply admitted the cause of action; and it is not reasonable to believe that, if the parties had so understood it, the trial would have proceeded, as it did, with no further allusion to the matter by any one concerned in the litigation.

This appeal does not present the question whether or not the plaintiff would have a right of action against the individual who originally placed the stone in the bag, in the perpetration of a deliberate wrong; and an expression of our views upon this subject would be merely obiter. Be that question as it may, the evidence given at the trial was not sufficient as a basis for recovery against the defendants, and a new trial should be had.

Judgment reversed, and new trial ordered, with costs to appellants to abide the event. All concur.